IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**ANGEL ZAMORA CRUZ**,

      Plaintiff,

v.

**BRYAN O. BRITT,**
**CHRISTOPHER SIMS, and**
**RODNEY McALLISTER,**

      Defendants.

Civil Action No. 7:09-CV-64 (HL)

## ORDER

This case is before the Court on Defendants' Motion for Summary Judgment (Doc. 90). Upon review of the pleadings, briefs, depositions, and affidavits submitted, the Court grants Defendants' motion.

## I.   FACTS

Plaintiff was housed as a pretrial detainee at the Irwin County Detention Center in 2008. On or about April 9, 2008, Plaintiff wanted to cut his hair and was complaining about hair clippers, or the lack thereof. Defendant Britt, an extraction team member, went to C Dormitory, where Plaintiff was housed, and took Plaintiff out into the sally port to discuss the situation. Britt stated that the administration was aware that there was only one set of clippers, and they were in the process of getting another pair. Britt told Plaintiff there was nothing he or any other officer could do for Plaintiff at that time.

According to Britt, Plaintiff was loud and hollering. Other inmates started coming to the door and beating on the door. Britt tried to get Plaintiff to calm down.

At this time, Defendant McAllister, a CERT officer, was running inmates to and from breakfast. Thus, there was a mass movement of inmates going back and forth between the dormitory and the cafeteria. McAllister overheard arguing in Plaintiff's dorm. He went to investigate and saw Plaintiff and Britt arguing in the sally port.

Britt asked Plaintiff to return to his dorm. Instead of obeying the order, Plaintiff asked Britt to call his supervisor. At that point, Britt instructed Plaintiff to turn around and put his hands on the wall. McAllister saw Plaintiff refuse to put his hands on the wall, while at the same time getting louder. Britt told Plaintiff several times to put his hands on the wall. Plaintiff admits that he was noncompliant with at least two orders to put his hands on the wall. Finally, Plaintiff raised his hands up in the air, but he did not turn around as ordered.[1]

---

[1] According to Defendants' expert, John David Anderson, an inmate who fails to comply with verbal directives from an officer and shows physical manifestations of resistance is engaged in active resistance. Active resistance entitles a detention officer to use his taser or other force in order to gain or regain control of the resistive subject. The use of force is necessary to restore order and discipline within the facility.

Anderson is a lecturer for the Georgia Law Enforcement Command College of Columbus State University. He is also an independent consultant and Training Coordinator for the Irwin County Detention Center. Anderson holds a number of instructor certifications, including ones from the Georgia Peace Officer Standards and Training Council and Taser International. He has been certified as a Taser Instructor since 2006. Anderson has trained most of the detention officers employed at the Irwin

Britt then grabbed Plaintiff around his waist to turn him around so he could be handcuffed.[2] According to McAllister, Plaintiff resisted being handcuffed. McAllister came in to assist in handcuffing Plaintiff, who continued to resist. The officers took Plaintiff to the ground to try and handcuff him. Plaintiff and Britt got into a scuffle and wound up on the floor together.[3]

Plaintiff, who was unsecured, eventually stood up. At that point, Britt fired his taser at Plaintiff. According to both Britt and McAllister, the taser had no effect on Plaintiff. Britt states that he deployed his taser in accordance with the training

---

County Detention Center, and believes he trained the three Defendants on matters including officer safety, use of tasers, use of force regulations and tactics, force alternatives, and response to resistance.

[2] Per Anderson, officers are trained to handcuff unruly or potentially dangerous inmates. The restraint allows the inmate and officer to avoid a physical contest by placing the inmate at a disadvantage, thus reducing the inmate's ability to assault the officer. This also allows the officer to escort the inmate to a more secure and isolated location with minimal risk of assault. Cooperative handcuffing techniques require the officer give verbal commands to the subject to face the opposite direction and place his hands on the wall if available. If the command is complied with, the officer gives additional commands to the inmate, which allows the officer to approach unseen from behind the inmate and securely handcuff the subject behind his back. If the command to turn around and face the wall is not complied with, officers are trained to place their hands on the subject. The purpose of placing their hands on the subject is so the officers can physically guide the subject into the proper position for submission.

[3] Anderson also discusses aggressive resistance, which is when an inmate engages in a physical altercation with a guard. This is one step beyond active resistance, and also entitles a detention officer to use his taser or other force against the inmate in order to gain or regain control of the subject. Again, the use of force is necessary to restore order and discipline within the facility.

he had received. Britt and McAllister were still trying to handcuff Plaintiff at this point.

Defendant Sims, a detention officer sergeant, received a radio message requesting officer assistance to the area of C Dormitory.[4] Upon arriving at C Dormitory, Sims saw Britt and McAllister engaged in a struggle with an inmate. At this time there were other inmates in the hallway. According to Sims, the officers did not have control over Plaintiff. Sims came into the sally port area and verbally instructed Plaintiff several times to get on the floor. Plaintiff, who was standing, refused to do so. Sims then deployed his taser at Plaintiff's chest. The officers were then able to gain control of Plaintiff.

Plaintiff was handcuffed by McAllister and taken to medical. He was seen by LPN Catherine Giddens. There were three taser prongs still intact. Giddens removed the prongs, and cleaned and dressed four puncture wounds. She also cleaned and treated abrasions on Plaintiff's neck. Giddens asked Plaintiff if he had any other problems or complaints at that time, and he said no. Plaintiff did not appear to be in any distress when he arrived. After Giddens finished treating Plaintiff, he was taken back to his cell.

---

[4] A call for assistance means that a breach of control has occurred. In responding to an emergency call, an officer may assume that control is lost and must be regained. In this situation, according to Anderson, the arriving officer is entitled to use his taser without attempting verbal commands. This is especially true when an inmate is engaged in a physical struggle with an officer.

Britt believes that Plaintiff was trying to incite a riot between rival gangs, and states that Plaintiff had to be handcuffed for security reasons. McAllister testified that Plaintiff's behavior represented a threat to the detention center and he had to be brought under control. Sims similarly testified that he had to use his taser to keep Plaintiff from injuring himself or the other officers, and that the officers had to gain control of Plaintiff because there were other inmates in the area who could have joined in the fight.

All three Defendants state that they did not kick, stomp, punch, elbow, jump on, or in any other way strike Plaintiff, and did not see anyone strike Plaintiff.

Plaintiff contends he did not act aggressively towards the officers and did not threaten them in any way. He alleges that Britt and McAllister kicked and beat him while he was on the floor. He also denies being part of any gang or trying to start a riot.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986))."If

6

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III.   ANALYSIS

Plaintiff alleges that Defendants subjected him to excessive force in violation of his Fourteenth Amendment constitutional rights. Plaintiff seeks to recover damages pursuant to 42 U.S.C. § 1983.[5]

"A jailer's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it 'shocks the conscience.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (citation omitted). "The use of force does not 'shock the conscience' if it is applied 'in a good-faith effort to maintain or restore discipline.' However, if the force is applied 'maliciously and sadistically to cause harm,' then it does 'shock the conscience,' and is excessive under the Eighth or Fourteenth Amendment." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

In determining whether the force was applied maliciously and sadistically to cause harm, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3)

---

[5] Plaintiff also alleges in his amended complaint that Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971) is applicable, but it is not. A Bivens suit challenges the constitutionality of the actions of federal officials. See Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998). None of the Defendants involved were federal officials. Plaintiff's claim under Bivens is dismissed.

the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to

the safety of staff and inmates; and (5) any efforts made to temper the severity of

a forceful response. Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89

L.Ed.2d 251 (1986). The court is to consider these factors "as reasonably

perceived by" the officer based on the facts known to him at the time and "give a

wide range of deference to prison officials acting to preserve discipline and

security." Id.; Fennell, 559 F.3d at 1217. This deference also applies when

considering "[d]ecisions made at the scene of a disturbance." Cockrell v. Sparks,

510 F.3d 1307, 1311 (11th Cir. 2007) (quotation omitted). A detainee may avoid

summary judgment "only if the evidence viewed in the light most favorable to him

goes beyond a mere dispute over the reasonableness of the force used and will

support a reliable inference of wantonness in the infliction of pain." Brown v.

Smith, 813 F.2d 1187, 1188 (11th Cir. 1987).

### A.    Use of Force by Defendant Britt

#### 1.    Need for application of force

By not obeying direct orders, Plaintiff created a situation which justified the

use of some force. When an inmate creates a disturbance, jailers are justified in

using force to restore order. Cockrell, 510 F.3d at 1311 ("'The need for the use of

force is established by the undisputed evidence that [the inmate] created a

disturbance. . . .Prison guards may use force when necessary to restore order

and need not wait until disturbances reach dangerous proportions before

responding.'" (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (alteration omitted)). Under the facts presented, the Court concludes that it was reasonable for Britt to believe that some force was necessary.

### 2.    Relation between the need and amount of force used

While some force may be used to control an unruly inmate, the force used must be proportionate to the need to restore order. Cockrell, 510 F.3d at 1312. Here, there are two separate uses of force which must be considered: (1) Britt's initial attempt to handcuff Plaintiff; and (2) the use of the taser on Plaintiff.

The amount of force involved in Britt placing his hands on Plaintiff and ultimately taking Plaintiff to the floor in an attempt to handcuff him was not an unreasonable amount of force under the circumstances. The amount of force was minimal and was in direct response to Plaintiff's failure to comply with orders. While Plaintiff states he was not physically resisting, the Eleventh Circuit has held that when a prisoner created a disturbance by failing to follow a prison guard's instructions and shouting obscenities, it was not unreasonable for the guard to grab the prisoner by the throat and shove him against the prison bars. Bennett, 898 F.2d at 1533. The appellate court has also held that the use of force sufficient to break bones did not violate the Eighth Amendment even though the prisoner had not offered any physical resistance. Cockrell, 510 F.3d at 1311.

As for the taser, Plaintiff contends he was just trying to stand up after being kicked and beaten by Britt and McAllister when Britt tased him in the chest. While

Plaintiff asserts that he was not fighting the officers, but instead was just trying to protect himself, it is undisputed that Britt was faced with a disobedient inmate who was unrestrained. Instead of remaining on the ground, Plaintiff stood up, still unsecured. Based on Plaintiff's previous refusal to comply with orders and Plaintiff's unsecured state, the use of the taser under the circumstances was not unreasonable.

### 3.   Extent of the injury inflicted

Although the "nature of the force rather than the extent of the injury" is the key question in a Fourteenth Amendment excessive force case, Wilkins v. Gaddy, --- U.S. ---, 130 S.Ct. 1175, 1176, 175 L.Ed.2d 995 (2010), the extent of the injury is still a relevant "factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Id. at 1178.

The only injuries Plaintiff suffered when Britt and McAllister took him to the ground were abrasions on his neck. Those were treated with hydrogen peroxide. Plaintiff does not allege any permanent or substantial injury from this part of the event. The minimal injuries lead the Court to find that Britt's initial use of force was to gain control, not cause harm. The Court notes that while Plaintiff contends Britt and McAllister kicked and beat him while on the floor, there is no medical evidence to support that contention. The nurse who treated Plaintiff immediately after the event did not register any injuries other than those related to the

takedown and to being tasered. Even Plaintiff does not allege any injuries consistent with being kicked or beaten. In fact, Plaintiff does not allege any injuries at all, whether from the takedown, from being tasered, or from allegedly being kicked and beaten.

As for the taser, the Court has no doubt that being tased is painful, but there is no evidence that the use of the taser caused any permanent or substantial injury to Plaintiff. The only injuries to Plaintiff from the taser were the puncture wounds, which only required ointment and band-aids. While the absence of a substantial injury is not dispositive, the minor nature of Plaintiff's injuries from the taser shows that Britt used taser in order to subdue and control Plaintiff rather than maliciously and sadistically to harm him.

### 4.    Extent of the threat to the safety of staff and inmates

There is no question that Plaintiff posed an immediate threat to the safety of the staff and other inmates. He admittedly got into an argument with an officer and disobeyed direct orders while in an area where a number of inmates were being moved back and forth to the cafeteria. Two officers could not get control of Plaintiff, resulting in an emergency call to other staff. Certainly this was a volatile situation which could have gotten even further out of hand considering that other inmates easily could have joined in.

### 5.    Efforts made to temper the severity of a forceful response

Britt made an effort to temper the severity of his response. Before the initial use of force, Britt attempted to gain Plaintiff's compliance with verbal commands. Those were ignored. It is not as if Britt immediately tased Plaintiff when he would not turn around.

Further, it is undisputed that after the incident was over, Plaintiff was immediately taken to medical. *See* Cockrell, 510 F.3d at 1312 ("[T]he fact that [the officers] immediately summoned medical assistance for Cockrell, 'temper[ed] the severity of [the] forceful response,' and makes it less likely that either of them was acting sadistically instead of in good faith." (quoting Whitley, 475 U.S. at 320)).

Considering all of the Whitley factors, the Court finds that Britt acted in a good faith effort to restore order and not with malicious and sadistic intent to harm Plaintiff.[6] Britt is entitled to summary judgment.

---

[6] Anderson opined that because Plaintiff refused Britt's verbal commands, Britt properly determined he needed to place his hands on Plaintiff in order to gain control and place Plaintiff in handcuffs. Britt used proper technique in taking Plaintiff to the floor in order to secure him. Anderson further opined that it was proper for Britt to use force against Plaintiff, including his taser, because of Plaintiff's resistance and his engagement in a physical altercation with Britt. Anderson states that Britt's response to Plaintiff's resistance and the discharge of his taser were in accordance with all applicable laws and training standards detailed both by Taser International and by the Georgia Basic Jail Officer Mandate Course Reference Text detailing appropriate use of force.

**B.      Use of Force by Defendant McAllister**

Considering the same factors listed above, the Court finds that any force applied by McAllister was also applied in a good faith attempt to restore order, rather than in a malicious and sadistic attempt to harm Plaintiff. McAllister saw Plaintiff refuse Britt's orders and was well aware that there were many unsecured inmates in the area, which combined caused a safety risk. Plaintiff's refusal to abide by orders created a disturbance, and some force was justified to restore order. The amount of force used by McAllister in attempt to assist in securing Plaintiff was not unreasonable. There was minimal injury inflicted in the form of some abrasions on Plaintiff's neck. Plaintiff does not allege any permanent or substantial injury from McAllister's participation in the event. Again, Plaintiff's refusal to follow order, and the fact there were numerous inmates in the area, posed a threat to the safety of the staff and inmates. Finally, Plaintiff was immediately seen in medical. While Plaintiff alleges McAllister kicked and beat him while he was on the ground, there is no evidence to support that allegation. Instead, the evidence shows that McAllister acted in good faith in an attempt to restore order. There is no evidence that he acted maliciously or sadistically to cause harm to Plaintiff.[7] McAllister is entitled to summary judgment.

---

[7] Anderson believes that McAllister properly came to assist Britt in regaining control of Plaintiff and used proper technique to take Plaintiff to the floor in an attempt to regain control of him.

### C.    Use of Force by Defendant Sims[8]

#### 1.    Need for application of force

Sims received a call for emergency assistance in C Dormitory. When he arrived, he found an unrestrained Plaintiff and the other two Defendants engaged in what he viewed as a struggle. He ordered Plaintiff to get down, but Plaintiff did not comply. Based on the struggle and Plaintiff's refusal to obey verbal commands, Sims reasonably perceived that some force was necessary to stop the altercation.

#### 2.    Relation between the need and amount of force used

The force used by Sims in deploying his taser was not an unreasonable amount of force under the circumstances. Again, Plaintiff was not restrained and was involved in an altercation with the other Defendants. The Court has to look at the evidence from Sims' point of view, and he saw a struggle between the three men which needed to be stopped. Further, Sims gave verbal commands to Plaintiff before firing his taser, all of which Plaintiff ignored. Based on the altercation and the refusal to follow orders, firing the taser at Plaintiff was a reasonable response.

#### 3.    Extent of the injury inflicted

As discussed in connection with Britt, Plaintiff suffered minimal injuries from the taser. The minor nature of Plaintiff's injuries from the taser shows that

---

[8] Since his use of force involved firing a taser, the Court will go through the Whitley factors as relates to Sims.

Sims used taser in order to subdue and control Plaintiff rather than maliciously and sadistically to harm him.

### 4.     Extent of the threat to the safety of staff and inmates

Plaintiff clearly posed a threat to Britt and McAllister. He also posed a threat to other staff and the inmates because there were other inmates in the hallway at this time being taken to and from breakfast. Plaintiff was already involved in a physical altercation and refused direct orders from Sims. It was certainly reasonable based on what he saw for Sims to believe there was a continued risk to jail security if Plaintiff was not brought under control.

### 5.     Efforts made to temper the severity of a forceful response

Sims made an effort to temper the severity of his response. He only fired his taser after Plaintiff refused to respond to verbal commands. Further, Sims only fired his taser once. And as noted above, Plaintiff was immediately taken to medical and treated.

Considering all of the factors, there is no question that Sims tased Plaintiff in a good faith effort to restore order and not with a malicious and sadistic intent to harm him. Sims gave Plaintiff the opportunity to comply with verbal commands, which he did not do, and it was only after that point that Sims fired his taser. Based on the altercation with the other Defendants, the fact there were unsecured inmates in the immediate area, and Plaintiff's refusal to obey commands, it was not unreasonable for Sims to deploy his taser to bring Plaintiff

under control and restore order in C Dormitory.[9] Sims is entitled to summary judgment.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 90) is granted. The Clerk of Court is directed to enter final judgment in favor of Defendants and close this case.


SO ORDERED, this the 11th day of January, 2013.


/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**


mbh

---

[9] Anderson concluded that Sims's action in deploying his taser upon seeing Plaintiff in a fight with the other two officers, and upon Plaintiff refusing to obey his verbal commands, was justified.